IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

COMPASSIONATE CARE HOSPICE,   )
                                    )
                 Plaintiff,   )
                                      )
vs.                                    )     Case Number CIV-09-28-C
                                      )
KATHLEEN SEBELIUS, Secretary of   )
United States Department of Health   )
and Human Services,               )
                                      )
               Defendant.   )

## MEMORANDUM OPINION AND ORDER

Plaintiff is a provider of hospice care and brought this action for declaratory and injunctive relief with respect to sums Defendant has deemed have been overpaid. As directed by the Court, both parties have submitted briefs in support of their respective positions to be decided on the administrative record. The matters are fully briefed and at issue.

In 1982, Congress expanded Medicare to include providing hospice care for terminally ill beneficiaries. The hospice benefit was designed to provide patients who are terminally ill with comfort and pain relief as well as emotional and spiritual support, generally in a home setting. Final Rule providing Medicare Hospice Coverage, 48 Fed. Reg. 56,008 (Dec. 16, 1983). Under the hospice benefit, Medicare pays a hospice provider a predetermined fee for each day that an eligible patient receives services. There are limits to the time periods for which services can be provided. There are also limits on the total amount of Medicare funds which can be paid for any single beneficiary. 42 U.S.C.

§ 1395f(i)(2)(C) provides a mechanism where the Medicare funds are to be allocated to "reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year." In 1983, Medicare published a rule on which it relies as implementing the cap set forth in the statutory language noted above, found at 42 C.F.R. § 418.309(b). The purpose of the statute and implementing regulation was to establish a cap on the total reimbursement payments from Medicare that each hospice provider may receive for all of its patients in any given fiscal year. From the materials before the Court, it appears that the statute and regulation created no significant hardship to hospice providers until recent adjustments were made defining the persons eligible for hospice care to include patients suffering from ailments other than cancer. With the addition of these new patients to hospice care, the length of stay per patient increased and the effect of the regulation, as well as other factors, resulted in Medicare demanding significant sums from providers which had been allegedly overpaid. In particular, Defendant has demanded $777,932 from Plaintiff for the fiscal year ending October 31, 2006. That figure has been revised to $840,857, and a subsequent demand for $1,363,638 for fiscal year 2007 was made.

Asserting that a significant source of the repayment demands arose from the implementing regulation and the fact that the regulation conflicted with the statute, Plaintiff filed the present action requesting the Court to declare the regulation invalid, enjoin further application of it, and enter judgment absolving Plaintiff of the alleged overpayments and refunding any payments and interest made to Medicare. Defendant countered with a motion of its own, arguing that Plaintiff lacks standing to challenge the regulation and, in the

alternative, that the Court should remand the matter to the Provider Reimbursement Review

Board ("PRRB").[1]

1.  Subject Matter Jurisdiction

In response to Plaintiff's motion, Defendant argues the Court lacks subject matter

jurisdiction to consider the case.  In this case, whether or not the Court has subject matter

jurisdiction is governed by the Social Security Act, in particular 42 U.S.C. § 1395oo(f)(1).

This statute grants Medicare providers "the right to obtain judicial review of any action of

the fiscal intermediary which involves a question of law or regulations relevant to the matters

in controversy whenever the [Provider Reimbursement Review Board] determines . . . that

it is without authority to decide the question . . . ."  42 U.S.C. § 1395oo(f)(1). The statute

permits expedited judicial review when the amount in controversy is $10,000 or more.

Defendant argues the amount in controversy cannot be determined at this time because there

_____

[1]  The Court notes this challenge has been presented to numerous other courts.  The Court
has considered the analysis of each in reaching the conclusions herein.  Those cases are: Autumn
Bridge v. Kathleen Sebelius, Case No. 09-1920-F (W.D. Okla.); Heart to Heart Hospice Inc., v.
Michael O. Leavitt, Case No. CIV-07-289-MD (N.D. Miss.); Los Angeles Haven Hospice v.
Michael O. Leavitt, Case No. CIV-08-4469-GW (C.D. Cal.); Autumn Light Hospice v. Kathleen
Sebelius, Case No. CIV-09-178-M (W,D, Okla.); American Hospice, Inc. v. Kathleen Sebelius, Case
No. CIV-08-1879-JEO (N.D. Ala.); Sojourn Case, Inc. v. Michael O. Leavitt, Case No. CIV-07-375-
GKF (N.D. Okla.); Tri-County Hospice, Inc. v. Kathleen Sebelius, Case No.
CIV-08-273-RAW/CIV-09-407-RAW (Consolidated) (E.D. Okla.), Lion Health Services, Inc. v.
Kathleen Sebelius, Case No. 4:09-CV-493-A (N.D. Tex.), Hospice of New Mexico, LLC v.
Kathleen Sebelius, Case No. CIV-09- 00145-RB/LFG (D. N.M.), Zia Hospice, Inc. v. Sebelius, Case
No. 09 CV 55/09 CV 1108 (Consolidated) (D.N.M.), and IHG HealthCare, Inc. v. Sebelius, Case
No. 09 CV 3233 (S.D. Tex.).

The Court's consideration of the parties' arguments on subject matter jurisdiction and
standing was greatly aided by the thorough opinion of Judge Ott in American Hospice v. Kathleen
Sebelius, Case No. 08-1879-JEO, as that case marshaled much of the relevant law in a single
opinion.

has been no determination of the amount of overpayment, if any, that would exist under the statute, as opposed to the regulation. Defendant further argues that in the event that amount falls below the $10,000 threshold, the Court would lack subject matter jurisdiction to decide this case. In its Reply, Plaintiff fails to note the distinction between the question of standing and the question of subject matter jurisdiction raised by Defendant. Plaintiff's Reply brief is devoted to asserting it has standing. Nevertheless, the information before the Court is adequate to address the issue.

To the extent Defendant argues the amount in controversy can only be determined after comparison of the amount of any overpayment under the statute as opposed to the regulation, Defendant defines "amount in controversy" too narrowly. The amount in controversy is determined by the nature of the controversy, which is defined in § 1395oo(a)(1)(A)(i). Thus, the amount in controversy is the amount Defendant claims Plaintiff has been overpaid. See St. Francis Med. Ctr. v. Shalala, 32 F.3d 805, 809 (3d Cir. 1994). Under that definition, the amount in controversy exceeds $700,000, well beyond the $10,000 limit set by the statute. While ultimately Plaintiff may only recover a portion of that amount, the crucial question is the amount in dispute or the amount being challenged by Plaintiff's action. Because the amount challenged by Plaintiff's action exceeds the statutory requirement, the Court has subject matter jurisdiction to consider the issue.

2. Standing

Defendant argues that Plaintiff lacks standing to challenge the regulation because it has not demonstrated that the challenged regulation is, in fact, the driving force behind the

repayment demands, and therefore Plaintiff has not met its burden of showing evidence of causation or redressability.

Because the Court's review is governed by the applicable provisions of the Administrative Procedures Act ("APA"), 5 U.S.C. § 701-706, its factual review is limited to those facts established during the administrative proceeding. Despite Defendant's arguments to the contrary, this determination does not preclude consideration of the arguments raised by Plaintiff; it merely limits the facts which can be considered by the Court. Review of the administrative record reveals that Plaintiff provided facts to the PRRB sufficient to consider the issue of standing.

The Court has previously addressed standing when resolving Defendant's motion to dismiss for lack of subject matter jurisdiction. In that order, the Court found that Plaintiff had pled facts which, if proven, would satisfy the three elements to determine standing. See Dkt. No. 17, p. 3. However, that determination evaluated the issue at the pleading stage, where general factual allegations of injury resulting from the Defendant's conduct may suffice. See Bennett v. Spear, 520 U.S. 154, 168 (1997) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). However, now that the proceedings have moved to the next level, where the parties seek judgment, a different standard applies. Once the standing issue is raised at the judgment stage it is incumbent upon Plaintiff to come forward with evidence containing specific facts supporting the allegations of standing. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103-04 (1998).

"[T]o have standing, a plaintiff must demonstrate: (i) an injury in fact that is both concrete and particularized as well as actual or imminent; (ii) an injury that is traceable to the conduct complained of; and (iii) an injury that is redressable by a decision of the court." Wyoming ex rel. Crank v. United States, 539 F.3d 1236, 1241 (10th Cir. 2008), citing Lujan, 504 U.S. at 560-61. Defendant argues that Plaintiff cannot satisfy these elements, as it has failed to offer any calculation demonstrating that it was application of the regulation and not some other factor that caused the requirement that Plaintiff repay sums to Medicare. However, it is not required that the application of the regulation be the *only* cause of injury to Plaintiff. The administrative record includes a copy of the notice provided to Plaintiff by the Medicare intermediary. In that notice, the intermediary states that it has reviewed Plaintiff's patient records for the fiscal year ending October 31, 2006, and determined that, as a result of the cap set forth at 42 C.F.R. § 418.309, the Medicare payments to Plaintiff exceeded the cap amount by $777,932. Thus, the administrative record makes clear that the application of the regulation led to the determination of overpayment. Whether or not that regulation only played a part of the determination or was the sole factor behind the overpayment, it is clear that the challenged regulation has caused harm to Plaintiff in the amount demanded for overpayment. Thus, the facts demonstrate an injury that is concrete and particularized, as well as actual or imminent. It arises from the challenged regulation and if the Court finds the regulation is invalid there must necessarily be a recalculation of the amount due, if any. Thus, the injury will be redressed by the Court's decision. The facts set

forth in the administrative record establish that Plaintiff has satisfied the elements of standing.

### 3. Validity of Regulation

The Court now turns to the merits of Plaintiff's challenge; i.e., whether or not the hospice cap regulation, 42 C.F.R. § 418.309, is reconcilable with the terms of the statute it purports to implement, 42 U.S.C. § 1395f(i)(2)(C). See also Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 418-19 (1993) ("'[w]here, as here, the statute expressly entrusts the Secretary with the responsibility for implementing a provision by regulation, our review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious.'") (quoting Heckler v. Campbell, 461 U.S. 458, 466 (1983)). The Court's consideration is further guided by Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984). Chevron sets forth a two-pronged analysis for examining the validity of agency regulation: (1) "whether Congress has directly spoken to the precise question at issue" and (2) if not, "whether the agency's answer is based on a permissible construction of the statute."

The pertinent portion of the regulation states:

(b) Each hospice's cap amount is calculated by the intermediary by multiplying the adjusted cap amount determined in paragraph (a) of this section by the number of Medicare beneficiaries who elected to receive hospice care from that hospice during the cap period. For purposes of this calculation, the number of Medicare beneficiaries includes–

(1) Those Medicare beneficiaries who have not previously been included in the calculation of any hospice cap and who have filed an election to receive hospice care, in accordance with

7

§ 418.24, from the hospice during the period beginning on September 28 (35 days before the beginning of the cap period) and ending on September 27 (35 days before the end of the cap period).

(2) In the case in which a beneficiary has elected to receive care from more than one hospice, each hospice includes in its number of Medicare beneficiaries only that fraction which represents the portion of a patient's total stay in all hospices that was spent in that hospice. (The hospice can obtain this information by contacting the intermediary.)

42 C.F.R. 418.309(b). This regulation purports to implement the requirements of 42 U.S.C. § 1395f(i)(2)(C) which in pertinent part states:

For purposes of subparagraph (A), the "number of medicare beneficiaries" in a hospice program in an accounting year is equal to the number of individuals who have made an election under subsection (d) of this section with respect to the hospice program and have been provided hospice care by (or under arrangements made by) the hospice program under this part in the accounting year, such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year or under a plan of care established by another hospice program.

After consideration of the plain language of the statute, the Court finds that Congress has spoken directly on the issue and therefore Defendant's interpretation is afforded no deference. Chevron, 467 U.S. at 842-43. The plain language of the statute directs that the provider's number of beneficiaries for any given fiscal year is to be "reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year." 42 U.S.C. § 1395f(i)(2)(C). Contrary to this clear language, the regulation makes no attempt to determine an appropriate proportion of the amount of care provided in each fiscal year; rather, it simply assigns the entire amount of a beneficiary's

allocation to a single year based solely on the date of admission. Defendant's arguments that its methodology achieves the same result and/or minimizes any accounting or recordkeeping burdens simply miss the point. The agency's obligation is to enact regulations which follow the mandate of Congress. Here, Defendant has failed in that duty. Accordingly, the Court finds it is not necessary to consider the second portion of the <u>Chevron</u> analysis. Because it was premised on an invalid regulation, Defendant's calculation of Plaintiff's required reimbursement amount must also be set aside. Thus, Plaintiff's request for an injunction will be granted. Defendant will be prohibited from further application of the regulation to Plaintiff and will be prohibited from collecting any further overpayment reimbursement that is or has been calculated based on the regulation.[2]

## 4. Monetary Relief

It is not within the scope of the Court's authority to enter judgment of any monetary amount in favor of Plaintiff at this time. As Defendant notes, this case is a review of an administrative process, and thus the Court is, as a general rule, prohibited from making factual findings. That restraint is particularly appropriate here, given the complicated issues present. Accordingly, the Court finds the appropriate course of action is to remand this matter to the PRRB for a determination of Plaintiff's overpayment liability, if any, as

---

[2] The Court has located the following cases which have reached the issue of the validity of the regulation and found it invalid for the substantially the same reasons outlined here. <u>See</u> <u>Tri-County Hospice v. Sebelius</u>, ___ F.Supp.2d ___, 2010 WL 784836 (E.D. Okla., Mar. 8, 2010); <u>Hospice of New Mexico, LLC v. Sebelius</u>, ___ F.Supp.2d ___, 2010 WL 773229 (D.N.M., Mar. 5, 2010); <u>Lion Health Servs. v. Sebelius</u>, ___ F.Supp.2d ___, 2010 WL 637954 (N.D. Texas, Feb. 22, 2010); <u>Los Angeles Haven Hospice, Inc. v. Leavitt</u>, No. CV 08-4469-GW(RZX), 2009 WL 5868513 (C.D. Cal., Jul. 13, 2009).

calculated under the statutory terms as opposed to the regulation. In the event Plaintiff has been overpaid, any amount should be offset by the amount Plaintiff has already repaid. In the event Plaintiff was not overpaid, Defendant shall return the amounts Plaintiff has already repaid. The Court will administratively close this matter pending completion of the PRRB process. Upon completion of that process, either party may move to reopen this case for further proceedings, as necessary.

## CONCLUSION

As set forth more fully herein, the Court finds: it has subject matter jurisdiction over this case; Plaintiff has standing to challenge the regulation; the regulation, 42 C.F.R. 418.309(b), is invalid; Plaintiff's Motion for Preliminary Injunction (Dkt. No. 21) is GRANTED; Defendant is enjoined from further application of the regulation to Plaintiff and prohibited from collecting any further overpayment reimbursement that is or has been calculated based on the regulation. This matter is remanded to the PRRB for determination of the amount of overpayment, if any, based on application of the statute rather than the regulation. This matter will be administratively closed pending the determination by the PRRB and may be reopened by either party, if necessary, at the conclusion of that process.

IT IS SO ORDERED this 7th day of June, 2010.

ROBIN J. CAUTHRON
United States District Judge